# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                        No. CR 07-1660 JB

ANTONIO GOMEZ-CASTRUITA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to the Pre-Sentence Report, filed October 10, 2007 (Doc. 15). The Court held a sentencing hearing on November 5, 2007. The primary issue is whether the Court should treat a conviction under Arizona state law for aggravated driving under the influence of intoxicating liquor while driver's license was suspended as a felony under the United States Sentencing Guidelines, while U.S.S.G. § 2L1.2(b)(1)(D) authorizes a 4-level enhancement for a prior felony conviction. Because the Arizona crime is punishable by imprisonment of more than one year, and because the Guidelines state that such crimes should be treated as a felony for enhancement purposes, the Court will overrule Defendant Antonio Gomez-Castruita's objection to the Pre-Sentence Report ("PSR").

## FACTUAL BACKGROUND

On September 18, 2006, Gomez-Castruita pled guilty to aggravated driving under the influence of intoxicating liquor while his driver's license was suspended, in violation of A.R.S. §§ 28-1383(A)(1), 28-1381(A)(1), 28-1444, 13-701, 13-701, and 13-801. See Defendant's Objections to the Pre-Sentence Report ("Defendant's Objections"), filed October 10, 2007 (Doc. 15). Under

Arizona law, the plea was considered a class four felony because, when Gomez-Castruita was arrested, he had a previous driving under the influence ("DUI") misdemeanor conviction.  <u>See</u> A.R.S. § 28-1383(L)(1); Defendant's Objections at 1.

A class four felony is punishable by 2.5 years.  <u>See</u> A.R.S. § 13-701(C).  On September 18, 2006, Gomez-Castruita pled guilty, and was sentenced to four months incarceration, with three years probation in the Coconino County Superior Court, Flagstaff, Arizona, case number CR-2006-0064. <u>See</u> PSR ¶ 22, at 6.  Gomez-Castruita was subsequently deported to Mexico on June 7, 2007.  <u>See</u> Criminal Complaint, filed June 18, 2007 (Doc. 1).

## PROCEDURAL BACKGROUND

On August 10, 2007, Gomez-Castruita pled guilty to a violation of 8 U.S.C. §§ 1326(a) and (b), Re-entry of a Removed Alien.  <u>See</u> Plea Agreement, filed August 10, 2007 (Doc. 12); PSR ¶ 41, at 11.  Paragraph 12 on page 4 of the PSR lists the prior 2006 Arizona conviction for aggravated driving under the influence of intoxicating liquor as a felony conviction under U.S.S.G. § 2L1.2(b)(1)(D), meriting a 4-level enhancement in offense level.  <u>See</u> PSR ¶ 12, at 4.  With the 4-level enhancement, Gomez-Castruita's offense level is 10.  <u>See</u> PSR at 11.  Because Gomez-Castruita has entered into a Fast-Track Plea Agreement, he is entitled to a 1-level decrease in his offense level.  <u>See</u> Plea Agreement ¶ e, at 3, filed Aug. 10, 2007 (Doc. 12); PSR ¶ 41, at 11.  A base offense level of 9, with a Criminal History of IV, produces an advisory guideline range of 15 to 21 months incarceration.  <u>See</u> PSR, at 11.

The United States has filed no objection to the PSR.  United States' Response to Objections to the PSR filed October 10, 2007 (Doc. 15), filed Oct. 19, 2007 (Doc. 16). Gomez-Castruita has submitted an objection to the PSR.  <u>See</u> Defendant's Objections.  Gomez-Castruita requests the Court strike the 4-level enhancement enumerated in paragraph 12 of the PSR and sentence him at

an offense level of 6.  See id. at 3.

The United States Probation Office ("USPO") received Gomez-Castruita's objection to the PSR on October 11, 2007.  See Addendum to the Presentence Report ("Addendum"), at 1.  United States Probation Officer Anthony Galaz prepared an addendum to the PSR dated October 16, 2007, which responds to the formal objections that Gomez-Castruita filed.  See Addendum, disclosed October 16, 2007.  The USPO maintains that it correctly applied the 4-level increase in paragraph 12.  See Addendum, at 1.

The United States, in its response to Gomez-Castruita's objection, states that it has reviewed the Addendum.  See United States' Response to Objections to the PSR filed October 10, 2007 (Doc. 15), filed Oct. 19, 2007 (Doc. 16).  The United States agrees with the analysis and position stated in the Addendum, and incorporates the Addendum by reference.  See id. at 1.

The Court held a sentencing hearing on November 5, 2007.  See Transcript of Hearing (taken Nov. 7, 2007) ("Tr.").[1]  The United States characterized Gomez-Castruita's aggravated DUI conviction as "an enhanced misdemeanor that becomes a felony . . . ." Tr. at 7:10-11 (Ortega).  The United States contended that Gomez-Castruita's conviction "still qualifies as a felony under the guideline that the Court is considering to apply in this matter."  Tr. at 7:12-13.

The United States also contended that U.S.C. § 3553(a)(6) counseled that the enhancement apply to Gomez-Castruita's sentence.  See Tr. at 8:3-11 (Ortega).  The United States further contended that Taylor v. United States, 495 U.S. 575 (1990), was specific to whether an aggravated felony could be applied, whereas Gomez-Castruita's conviction was for "just a straight felony."  Tr. at 9:6-13 (Court & Ortega).  At the hearing, Gomez-Castruita acknowledged that there is a split in

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the Circuits on this issue and that, were the Court to adopt the reasoning of the United States Court of Appeals for the Ninth Circuit, it would change the outcome of Gomez-Castruita's sentence. <u>See</u> Tr. at 7:16-24 (Court & Johnson). Gomez-Castruita argued <u>United States v. Sanchez-Villalobos</u>, 412 F.3d 572 (5th Cir. 2005), is distinguishable because "in that case the Fifth Circuit was actually analyzing a crime under the Controlled Substances Act." Tr. at 10:8-10 (Johnson). Gomez-Castruita argued that <u>Mutascu v. Gonzales</u>, 444 F.3d 710 (5th Cir. 2006), is inapplicable to this case, because it involved the question whether the defendant qualified for cancellation of removal when he was in removal proceedings. <u>See</u> Tr. at 11:6-9 (Johnson).

## ARIZONA LAW

A.R.S. § 28-1383 provides:

A. A person is guilty of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs if the person does any of the following:

1. Commits a violation of § 28-1381, § 1382 or this section while the person's driver license or privilege to drive is suspended, canceled, revoked or refused or while a restriction is placed on the person's driver license or privilege to drive as a result of violating § 28-1381 or 28-1382 or under § 28-1385.

A.R.S. § 28-1383(A)(1). A.R.S. § 28-1383(L)(1) provides that a violation of A.R.S. § 28-1383(A)(1) constitutes a class 4 felony. <u>See</u> A.R.S. § 28-1383(L)(1). <u>See also</u> <u>State v. Skiba</u>, 19 P.3d 1255, 1257 (Ariz. Ct. App. 2001)(holding that A.R.S. § 28-1383(A)(1) prohibits the commission of a DUI offense while a restriction is placed on the right to drive because of a prior DUI offense.). A class 4 felony is punishable by 2.5 years. <u>See</u> A.R.S. § 13-701(C)(3). A non-aggravated DUI offense is a class 1 misdemeanor under Arizona law. <u>See</u> A.R.S. § 28-1381(C). A class 1 misdemeanor is punishable by six months imprisonment. <u>See</u> A.R.S. § 13-707(A).

## ENHANCEMENT UNDER THE SENTENCING GUIDELINES

Under U.S.S.G. § 2L1.2(b)(1)(D), a prior conviction for a felony authorizes a 4-level

increase in the offense level for the offense of Unlawfully Entering or Remaining in the United States.  U.S.S.G. § 2L1.2 provides:

> § 2L1.2. Unlawfully Entering or Remaining in the United States
>
> (a) Base Offense Level: 8
>
> (b) Specific Offense Characteristic
>
> (1) Apply the Greatest:
>
> If the defendant previously was deported, or unlawfully remained in the United States, after--
>
> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels;
>
> (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;
>
> (C) a conviction for an aggravated felony, increase by 8 levels;
>
> (D) a conviction for any other felony, increase by 4 levels; or
>
> (E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

U.S.S.G. § 2L1.2 (emphasis added).  Pursuant to U.S.S.G. § 2L1.2 Application Note 2, a "felony means any federal, state, or local offense punishable by imprisonment for a term exceeding one year."  U.S.S.G. § 2L1.2 cmt. app. n. 2.  See United States v. Ordonez-Navarrete, 154 Fed.Appx. 66, 69 (10th Cir. 2005)(holding that a defendant's conviction for third degree assault was a felony under 8 U.S.C. § 1326(b)(1), because the maximum sentence permitted under state law for that offense is 18 months, under 8 U.S.C. § 1326(b)(1), punishment is up to ten years imprisonment); United States v. Diaz-Bonilla, 65 F.3d 875, 877 (10th Cir. 1995)(holding that, even if Colorado law

defined third degree assault as a misdemeanor, the maximum penalty for it was up to two years so that it qualified, therefore, as a felony under §2L1.2.  But see United States v. Ordonez-Navarette, 154 Fed.Appx. 66, 68 n. 1 (explaining that United States v. Diaz-Bonilla "predated U.S.S.G. § 2L1.2, Application Note 2.").

### A.   THE SUPREME COURT OF THE UNITED STATES' DECISIONS

In Taylor v. United States, a defendant pleaded guilty to felon in possession of a firearm. See 495 U.S. at 578.  At the time of his plea, the defendant had four prior convictions for robbery, assault, and second-degree burglary under Missouri law.  See id. The United States sought to enhance his sentence under 18 U.S.C. § 924(e), which provides that a person who has three previous convictions for a violent felony or a serious drug offense, or both, shall be fined no more than $25,000 and imprisoned not less than 15 years.  See id.  Taylor contended that his burglary convictions did not count for enhancement because they did not "involve conduct that presents a serious potential risk of physical injury to another."  Id. (quoting § 924(e)(2)(B)(ii))(internal quotations omitted).  The United States Court of Appeals for the Eighth Circuit held that the word "burglary" in § 924(e)(2)(B)(ii) meant burglary, however state law defined that phrase.  See Taylor v. United States, 495 U.S. at 579.  The Supreme Court rejected the Eighth Circuit's view, because it was "implausible that Congress intended the meaning of 'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of conviction."  Id. at 590.

Before the Supreme Court's decision in Taylor v. United States, some Circuits had ruled that § 924(e) incorporated the common-law definition of burglary, "relying on the maxim that a statutory term is generally presumed to have its common-law meaning."  Id. at 593.  The Supreme Court noted that "[t]he problem with this view is that the contemporary understanding of 'burglary' has diverged a long way from its commonlaw roots."  Id. at 593.  Thus, "burglary in § 924(e) must have

some uniform definition independent of the labels employed by the various States' criminal codes."
Id. at 592.  The Supreme Court concluded that a person has been convicted of burglary for purposes
of § 924(e) enhancement if he or she commits burglary in the "generic sense."  Id. at 598.  Burglary
in the generic sense means "having the basic elements of unlawful or unprivileged entry into, or
remaining in, a building or structure, with intent to commit a crime."  Id.  The Supreme Court
"therefore reject[ed] [the United States'] view that Congress meant to include only a special subclass
of burglaries, either those that would have been burglaries at common law, or those that involve
especially dangerous conduct."  Id.

The Supreme Court additionally considered "whether the sentencing court in applying §
924(e) must look only to the statutory definition of the prior offenses, or whether the court may
consider other evidence concerning the defendant's prior crimes."  Id. at 600.  It noted the Circuits
had "uniformly held that § 924(e) mandates a formal categorical approach, looking only to the
statutory definitions of the prior offenses, and not to the particular facts underlying those
convictions."  Id.  The Supreme Court found the Circuits' logic persuasive.  See id.  The Supreme
Court then directed sentencing courts to look at the charging paper or jury instructions to make sure
they actually required the jury to find all the elements of generic burglary in order to convict the
defendant.  See id. at 602.

In 1995, a defendant pleaded guilty to violating 8 U.S.C. § 1326 in reentering the United
States after having been deported earlier for three convictions for aggravated felonies.  See
Almendarez-Torres v. United States, 523 U.S. 224, 225 (1998).  8 U.S.C. § 1326(b)(2) "authorize[d]
a prison term of up to, but no more than, 20 years for any alien described in subsection (a), if the
initial deportation was subsequent to a conviction for commission of an aggravated felony."  Id. at
226.  At the sentencing, the defendant contended that he could be sentenced only to the penalty for

an offender without an earlier conviction.  See id. at 229.  The defendant contended that he could

not be sentenced to more than two years imprisonment, the maximum authorized for an offender

with no previous convictions.  See id. at 227.  The United States Court of Appeals for the Fifth

Circuit rejected the defendant's argument, and held that "subsection (b)(2) [of 8 U.S.C. § 1326] is

a penalty provision that simply permits a sentencing judge to impose a higher sentence when the

unlawfully returning alien also has a record of prior conviction."  Id.  The Supreme Court noted that

eight circuits, including the Fifth Circuit, had held that the enhancement "simply permits a

sentencing judge to impose a higher sentence when the unlawfully returning alien has a record of

prior convictions."  Id.  The Supreme Court noted that the  Ninth Circuit had reached the opposite

conclusion.  See id.  The Supreme Court granted certiorari to resolve the differences among the

Circuits.  See id.

The Supreme Court in  Almendarez-Torres v. United States  noted that the subject matter of

8 U.S.C. § 1326(a)(2) "is recidivism."  Id. at 230.  It also noted "[t]hat subject matter -- prior

commission of a serious crime -- is as typical a sentencing factor as one might imagine."  Id. The

Supreme Court noted "the lower courts have almost uniformly interpreted statutes (that authorize

higher sentences for recidivists) as setting forth sentencing factors, not creating new crimes (at least

where the conduct, in the absence of the recidivism, is independently unlawful.)"  Id.  The Supreme

Court also "found no statute that clearly makes recidivism an offense element in such

circumstances."  Id.

The Supreme Court in  Almendarez-Torres v. United States rejected the defendant's

argument that recidivism must be treated as an element of his offense.  See id. at 247.  The Supreme

Court noted that recidivism laws have a long tradition in the United States.  See id. at 243.

"Consistent with this tradition, the Court said long ago that a State need not allege a defendant's

prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was "necessary to bring the case within the statute.'" Id. at 243 (quoting Graham v. West Virginia, 224 U.S. 616, 624 (1912)).  The Supreme Court rejected the defendant's argument that any significant increase in a statutory maximum sentence would trigger a "constitutional elements requirement," because "we would also find it difficult to reconcile any such rule with our precedent holding that the sentencing-related circumstances of recidivism are not part of the definition of the offense for double jeopardy purposes."  Almendarez-Torres v. United States, 523 U.S. at 247.  It also noted that such a rule "would seem anomalous in light of existing case law that permits a judge, rather than a jury, to determine the existence of factors that can make a defendant eligible for the death penalty, a punishment far more severe than that faced by [the defendant] here."  Id.

The Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), answered the question "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt."  Id. at 469.  Apprendi pled guilty to second-degree possession of a firearm for an unlawful purpose and third-degree unlawful possession of an antipersonnel bomb.  See id. at 470.  The State reserved the right in the plea agreement to ask for an enhanced sentence on one of the counts of possession on the ground that it was committed with a biased purpose under a hate crime law.  See id. Apprendi reserved his right to challenge the hate-crime sentence enhancement on the ground that it was unconstitutional.  See id.  The district court found by a preponderance that the hate-crime enhancement applied.  See id. at 471.

In Apprendi v. New Jersey, the Supreme Court characterized Almendarez-Torres v. United States, 523 U.S. 224 (1998), as an "exceptional departure."  Apprendi v. New Jersey, 530 U.S. at

487. "Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated by allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." Id. at 488. "Moreover, there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." Id. at 496. The Supreme Court distinguished Almendarez-Torres v. United States: "Whereas recidivism 'does not relate to the commission of the offense' itself, New Jersey's biased purpose inquiry goes precisely to what happened in the 'commission of the offense.'" Id. (quoting Almendarez-Torres v. United States, 523 U.S. at 230).

"Recidivism has long been recognized as a legitimate basis for increased punishment." Ewing v. California, 538 U.S. 11, 25 (2003). The defendant argued that a sentence of twenty-five years to life under California's three-strike law was disproportionate and violative of the Eighth Amendment when his offense was felony grand theft for stealing approximately $1,200.00 worth of merchandise -- theft of three golf clubs. See id. at 28. The Supreme Court weighed not only Ewing's current felony, "but also his long history of recidivism," because "[a]ny other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanction." Id. at 29. The Supreme Court found the sentence "justified by the State's public-safety interest in incapacitating and deterring recidivist felons, and amply supported by [Ewing]'s own long, serious criminal record." Id. at 29-30.

In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court considered whether imposition of an "exceptional" sentence of 90 months after making a judicial determination that the

defendant acted with "deliberate cruelty" violated his Sixth Amendment right to trial by jury. 542 U.S. at 297. Under Washington law, a sentence above the standard range may be imposed if the judge finds substantial and compelling reasons justifying an exceptional sentence. See id. at 299. Pursuant to the plea agreement, Blakely's sentencing range was between 49 and 53 months. See id. at 300. The judge rejected the state's recommendation and imposed an exceptional sentence of 90 months, based on a statutorily enumerated ground for departure in domestic violence cases. See id. The increase of Blakely's sentence was more than 3 years, to which he objected. See id. The judge conducted a three-day bench trial, after which he issued findings of fact and adhered to his initial determination that Blakely acted with deliberate cruelty. See id.

The Supreme Court applied the Apprendi v. New Jersey rule: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely v. Washington, 542 U.S. at 301. The State argued that there was no Apprendi v. New Jersey violation because the relevant statutory maximum was the ten year maximum for class B felonies, because no exceptional sentence may exceed that limit. See id. at 303. The Supreme Court rejected that argument, because for Apprendi purposes, the statutory maximum is "the maximum sentence that a judge may impose solely based on the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis in the original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id. (emphasis in the original). The judge in Blakely's case could not have imposed the 90 month sentence "solely on the basis of the facts admitted in the guilty plea." Id. Blakely's sentence was, therefore, invalid for non-compliance with the Sixth Amendment. See id. at 305.

The Immigration and National Act ("INA") defines an aggravated felony to include illicit trafficking in a controlled substance, including crime as defined in 18 U.S.C. § 924(c).  See Lopez v. Gonzales, 127 S.Ct. 625, 627-28 (2006).  In Lopez v. Gonzales, the Supreme Court held conduct made a felony under state law but a misdemeanor under the Controlled Substances Act not a felony punishable under the Controlled Substance Act.  See id. at 627.  The United States argued that "some States graduate offenses from drug possession from misdemeanor to felony depending on quantity, whereas Congress generally treats possession alone as a misdemeanor whatever the amount."  Id. at 633.  The Supreme Court reasoned that "Congress knows that any resort to state law will implicate some disuniformity in state misdemeanor-felony classifications, but that is no reason to think Congress meant to allow the States to supplant its own classifications when it specifically constructed its immigration law to turn on them."  Id.  The Supreme Court held "that a state offense constitutes a felony punishable under the Controlled Substances Act  only if it proscribes conduct punishable as a felony under federal law."  Id. (internal quotations omitted).

### B.      THE NINTH CIRCUIT'S POSITION

The Ninth Circuit has held that recidivist enhancements must be separated from the actual offense when making a determination whether it is an aggravated felony conviction for purposes of enhancement under U.S.S.G. § 2L1.2.  See United States v. Corona-Sanchez, 291 F.3d 1201, 1210 (9th Cir. 2002), overruled on other grounds by United States v. Vidal, 426 F.3d 1011 (9th Cir.2005).  The Ninth Circuit in United States v. Corona-Sanchez considered whether a petty theft committed by a previous offender was an aggravated felony under U.S.S.G. § 2L1.2.  See 426 F.3d at 1204-13.  In United States v. Corona-Sanchez, the Ninth Circuit  first noted that Congress did not define the term "theft offense" in 8 U.S.C. § 1101(a)(43)(G).  See 426 F.3d at 1204.  Its first task, therefore, was to construe and define the meaning of that phase.  See id.

The Ninth Circuit has two different methodologies it uses, depending upon the nature of the "qualifying offense." Id. If the offense "is described in terms of a traditional common law crime, then [the Ninth Circuit has] defined the offense in terms of its generic, core meaning." Id. "If, on the other hand, the qualifying offense is described in terms that do not embrace a traditional common law crime, [the Ninth Circuit has] employed the ordinary, contemporary, and common meaning of the statutory words." Id. (internal quotations omitted).

In United States v. Corona-Sanchez, the Ninth Circuit's "choice of methodology [was] clear because the contemporary crime of theft stems from the common law crime of larceny or theft." Id. (internal quotations omitted). After constructing the meaning of theft offense, the Ninth Circuit next determined "whether the state statute that formed the basis of the sentence enhancement qualifies as a theft offense." Id. at 1205. The Ninth Circuit then identified "the statute upon which the predicate offense was based." Id. The only information available about the conviction came from the information in the pre-sentence report, and no other court documents or evidence were presented to the district court nor the Ninth Circuit concerning the offense. See id. at 1206.

The presentence report in United States v. Corona-Sanchez described the qualifying offense as "666/488 PC, Petty Theft with Prior Jail Term for a Specific Offense," but the Ninth Circuit found the relevant offense was defined in California Penal Code § 484(a), the general California theft statute. Id. The Ninth Circuit explained that a conviction under § 484(a) for petty theft "does not facially qualify as an aggravated felony for federal sentencing purposes under Taylor v. United States, because it is not a theft offense for which the term of imprisonment is at least one year as required by 8 U.S.C. § 1101(a)(43)(G)." Id. at 1208. California Penal Code § 484(a) provides:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any

> false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, and in determining the value of services received the contract price shall be the test. If there be no contract price, the reasonable and going wage for the service rendered shall govern. For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question. The hiring of any additional employee or employees without advising each of them of every labor claim due and unpaid and every judgment that the employer has been unable to meet shall be prima facie evidence of intent to defraud.

Cal. Penal Code § 484(a) (West 2001).   "Theft in other cases is petty theft."  Cal. Penal Code § 488

(West 2001).   California Penal Code  § 666 provides:

> Every person who, having been convicted of petty theft, grand theft, auto theft under Section 10851 of the Vehicle Code, burglary, carjacking, robbery, or a felony violation of Section 496 and having served a term therefor in any penal institution or having been imprisoned therein as a condition of probation for that offense, is subsequently convicted of petty theft, then the person convicted of that subsequent offense is punishable by imprisonment in the county jail not exceeding one year, or in the state prison.

Cal. Penal Code § 666 (West 2001). "Under California law, the maximum possible sentence for

petty theft is six months."   United States v. Corona-Sanchez, 291 F.3d at 1208.

The defendant in United States v. Corona-Sanchez received a two-year sentence for his petty

theft crime because of the application of California Penal Code § 666 "which provides a sentence

enhancement for recidivists."   United States v. Corona-Sanchez, 291 F.3d at 1208.  The Ninth

Circuit held that, "under the categorical approach, we must separate the recidivist enhancement from

the underlying offense."  Id. at 1210.  "The maximum possible sentence for petty theft in violation

of California Penal Code §§ 484(a) and 488, considered without reference to § 666, is six months."

Id.  The Ninth Circuit then held that a conviction for petty theft in California is not an aggravated felony under 8 U.S.C. § 1101(a)(43)(G).  See United States v. Corona-Sanchez, 291 F.3d at 1206 (explaining that California Penal Code § 666 "does not describe a crime.").

In United States. v. Pimentel-Flores, 339 F.3d 959 (9th Cir. 2003), the defendant pled guilty to violations of 8 U.S.C. §§ 1326(a) and 1326(b)(1).  See 339 F.3d at 961.  The prior felony was a conviction under Washington law for "assault in violation of a court order."  Id.  The defendant received a thirty-day jail sentence, one year of probation, and a $1,000.00 fine for the assault offense.  See id.  The PSR in United States. v. Pimentel-Flores "did not identify the statute under which defendant had been convicted."  Id.  "Additionally, the government failed to provide any other judicially-noticeable documents indicating the statute of conviction."  Id.  The USPO determined that the defendant's assault conviction was a felonious crime of violence, authorizing a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A).  See 339 F.3d at 961.  The defendant contended that "his core prior offense -- assault -- may not have been a felony and may have constituted negligent conduct or misdemeanor assault, in which case it would not be considered a 'crime of violence.'"  Id. at 967.

The Ninth Circuit noted that "[w]e have held in the past that state sentencing enhancements raising misdemeanors to felonies cannot be considered in determining whether a prior conviction is an 'aggravated felony.'"  Id. at 969.  "Instead, the court must examine the statute under which a defendant was convicted for his core offense."  Id. (citing United States v. Corona-Sanchez, 291 F.3d at 1209-10).  The Ninth Circuit held that a third-or fourth-degree assault did not qualify as a crime of violence under Taylor v. United States' categorical approach.  See United States. v. Pimentel-Flores, 339 F.3d at 969.  The Ninth Circuit reaffirmed its position in United States v. Corona-Sanchez: "When the statute of conviction does not facially qualify as an aggravated felony

under federal sentencing law, the sentencing court should have examined the record for documentation or judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes under the modified categorical approach." United States. v. Pimentel-Flores, 339 F.3d at 969 n.11 (citing  United States v. Corona-Sanchez, 291 F.3d at 1211). The Ninth Circuit remanded the case to the sentencing court with instructions that it "should determine on an open record under what statute defendant was convicted and whether his core prior offense was a felony that now qualifies as a 'crime of violence' within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii)."  United States. v. Pimentel-Flores, 339 F.3d at 969.

In United States v. Moreno-Hernandez, 419 F.3d 906 (9th Cir. 2005), the Ninth Circuit declined to apply the logic of  United States v. Corona-Sanchez to a case "where the sentencing factor is based on the circumstances of the crime itself."  United States v. Moreno-Hernandez, 419 F.3d at 909.  In United States v. Moreno-Hernandez, the Ninth Circuit agreed with the district court that the defendant's conviction was a felony for the purposes of sentencing enhancement when he was charged with an assault that would normally be a misdemeanor under Oregon state law, but which becomes a felony punishable by up to five years in prison when it is committed in the presence of the victim's minor child.  See id. at 908, 909.  The Ninth Circuit admitted in United States v. Moreno-Hernandez that "[w]hat the Corona-Sanchez court meant by 'enhancements' is thus not absolutely clear."  Id. at 911.  The Ninth Circuit acknowledged in United States v. Moreno-Hernandez that there is language in United States. v. Pimentel-Flores which suggests that United States v. Corona-Sanchez is applicable to "all sentencing factors, not just those based on recidivism."  United States v. Moreno-Hernandez, 419 F.3d at 912.  The Ninth Circuit stated "[i]t is thus unlikely that the less-than-clear language of Pimentel-Flores, summarizing Corona-Sanchez, was meant to go beyond the circumstances before the court in either of the two cases."  United

States v. Moreno-Hernandez, 419 F.3d at 912.  "When legislatures have chosen to demarcate sentences based on specific characteristics of the offense itself rather than on some aspect of the offender's legal history, we believe the Corona-Sanchez 'core offense' concept does not apply, and that the entire sentence, including its offense-based aggravating characteristics, must be factored into our determination of whether or not it is a 'felony.'" United States v. Moreno-Hernandez, 419 F.3d at 913-14.  The Ninth Circuit concluded that the defendant's prior conviction under Oregon law for assault and the aggravating factor of assault in the presence of the victim's minor child is a felony because of its statutory maximum sentence of five years' imprisonment, and did not consider the aggravating factor separately.  See id. at 914.

### C.      THE FIFTH CIRCUIT'S POSITION.

The Fifth Circuit has taken a position contrary to that the Ninth Circuit has taken.  See United States v. Sanchez-Villalobos, 412 F.3d 572, 577 n.3 (5th Cir. 2005); Mutascu v. Gonzales, 444 F.3d 710, 712 (5th Cir. 2006).  The Fifth Circuit, in United States v. Sanchez-Villalobos, held a defendant's conviction for possession of codeine was a felony under U.S.S.G. § 2L1.2(b)(1)(C) because that offense "could have been punished . . . as a felony with a penalty of up to two years imprisonment." 412 F.3d 572, 577 (5th Cir. 2005).  The defendant's penalty for codeine possession was greater because of his prior conviction for possession of marijuana.  Id.  The Fifth Circuit recognized that the Ninth Circuit "takes a contrary position, and considers only 'the sentence available for the crime itself, without enhancements.'" Id. at 577 n.3.  In Mutascu v. Gonzales, the Fifth Circuit reiterated its position in United States v. Sanchez-Villalobos, albeit in the context of the Fifth Circuit reviewing Mutascu's petition for review of a final order of the Board of Immigration Appeals ordering him removed from the United States.  See 444 F.3d 710, 712 ( 5th Cir. 2006).  The Fifth Circuit stated: "We do not follow the reasoning in Corona-Sanchez." Mutascu

v. Gonzales, 44 F.3d at 712.  Mutascu's pervious jail term was for Petty Theft with Prior Jail Term under California Penal Code § 666.  See id.  "This conviction carried with it a one year jail term, bringing [the defendant] within the ambit of 8 U.S.C. § 1101(a)(43)(G)."  Id.  The Fifth Circuit held cancellation of removal was unavailable for Mutascu because he was convicted of an aggravated felony.  See id.

### D.     OTHER COURTS.

Other circuits have rejected the Ninth Circuit's reasoning in United States v. Corona-Sanchez.  In United States v. Henton, 374 F.3d 467 (7th Cir. 2004), the United States Court of Appeals for the Seventh Circuit rejected the defendant's assertion that the enhancement for prior drug offenses under the Armed Criminal Control Act 18 U.S.C.A. § 924(e)(1). The Seventh Circuit based its decision on the fact that the prior conviction need not be charged in the indictment nor proven to a jury.  See id. at 470 ("But although 18 U.S.C. § 924(e) operates to increase the statutory maximum for [the defendant's] crime from ten years to life, the Supreme Court has excluded increases beyond the statutory maximum for recidivism from the Apprendi rule, holding that "the fact of a prior conviction" need not be charged in the indictment and proven to the jury.").

In United States v. Duval, 496 F.3d 64, 83 (4th Cir. 2007), the defendant argued his conviction for assault under state law did not qualify as a felony for the purpose of the Armed Career Criminal Act.  See 496 F.3d at 64.  The defendant urged the United States Court of Appeals for the Fourth Circuit to adopt the reasoning of United States v. Corona-Sanchez, 291 F.3d at 1209.  See United States v. Duval, 496 F.3d at 81.  The United States contended that the logic of the Fifth and Seventh Circuits, in Mutascu v. Gonzales, 444 F.3d at 712, and United States v. Henton, 374 F.3d at 469-70, was more persuasive. The Fourth Circuit summarized some of the difficulties that arise with the issue whether an underlying conviction is a felony for the purpose of enhancement:

> In spite of the difficult questions that the Government's position presents, we are ultimately persuaded that logic and precedent support the conclusion that Duval was convicted of "recidivist assault," and thus was convicted of a felony. First, although Apprendi stated that recidivism did not necessarily relate to the commission of an offense, 530 U.S. at 496, 120 S.Ct. 2348, this does not mean that an offense could not be defined with respect to recidivism. In fact, since Apprendi was decided, Ewing construed a conviction under California's repeat offender statute as recidivist theft, 538 U.S. at 28, 123 S.Ct. 1179, and more recently, in López v. Gonzáles, the Court noted that state drug possession statutes correspond to federal drug statutes, including "possession of cocaine base and recidivist possession," --- U.S. ----, n. 6, 127 S.Ct. 625, 630 n. 6, 166 L.Ed.2d 462 (2006) (emphasis added). We acknowledge that these holdings create some tension with Almendarez-Torres, but as Justice Thomas noted in his dissent from denial of certiorari in Rangel-Reyes, the Supreme Court is "the only court authorized to" overturn that decision. 126 S.Ct. at 2875.

United States v. Duval, 496 F.3d 64, 83 (4th Cir. 2007). The Fourth Circuit held that the defendant's conviction was a felony under the Armed Career Criminal Act "when Maine law would recognize it as such for state-law purposes." Id. at 84.

## E.      THE TENTH CIRCUIT.

In United States v. Peña-Flores, No. 06-2242, 2007 WL 2563013, at *1 (10th Cir. Sept. 4, 2007), the United State Court of Appeals for the Tenth Circuit declined to reach the issue whether a 4-level enhancement for felony conviction using U.S.S.G. § 2L1.2(b)(1)(D) was appropriate where the enhancement was based upon a prior Arizona conviction for aggravated driving under the influence and the defendant had pled guilty to one count of illegal reentry of a removed alien in violation of 8 U.S.C. § 1326(a).  See No. 06-2242, 2007 WL 2563013, at *1.  The defendant challenged the 4-level enhancement, arguing that his prior conviction should have been treated as a misdemeanor.  See id. While the case was pending on appeal, the defendant was removed from the United States after completing his term of imprisonment.  See id.  The Tenth Circuit dismissed the appeal for mootness.  See id.

In United States v. Hernandez-Garduno, 460 F.3d 1287 (10th Cir. 2006), the Tenth Circuit

noted that the "definition of 'felony' for purposes of §2L1.2(b)(1)(A)(ii) includes any offense <u>punishable</u> by more than one year of imprisonment, irrespective of the actual sentence imposed." 460 F.3d at 1293 (emphasis in the original).   Three criminal appeals were consolidated and presented "the question whether previous Colorado misdemeanor convictions for third-degree assault constitute crimes of violence under § 2L1.2 of the United States Sentencing Guidelines when the defendants were sentenced to less than one-year imprisonment." <u>Id.</u> at 1289.   The defendants argued "that § 2L1.2 defines a 'felony' for the purposes of crime of violence enhancement in reference to 8 U.S.C. § 1101." <u>Id.</u> at 1292.   Further, "[b]ecause 8 U.S.C. § 1101(a)(43)(F) limits aggravated felonies to crimes of violence 'for which the term of imprisonment [is] at least one year,' the defendants argue[d] that § 2L1.2 of the Sentencing Guidelines also includes such a limitation, notwithstanding the application note that defines 'felony' as an offense '<u>punishable</u> by imprisonment for a term exceeding one year.'" <u>Id.</u> (quoting U.S.S.G. § 2L1.2 n.2)(alterations and emphasis in the original).   The Tenth Circuit held that "[t]he definition of 'felony' for purposes of § 2L1.2(b)(1)(A)(ii) includes any offense <u>punishable</u> by more than one year of imprisonment, irrespective of the actual sentence imposed." <u>United States v. Hernandez-Garduno</u>, 460 F.3d at 1293.   It then determined that the defendants' convictions under Colorado law for third-degree assault "were felonies under § 2L1.2(b)(1)(A), even thought the convictions may not have qualified as aggravated felonies under 8 U.S.C. § 1101(a)(43)(F)," because Colorado law "provides for a term of imprisonment up to 18 months." <u>United States v. Herandez-Garduno</u>, 460 F.3d at 1293.

   The Tenth Circuit has employed the <u>Taylor v. United States</u>' categorical approach to determine whether a prior conviction is an "aggravated felony."   The Tenth Circuit employed the <u>Taylor v. United States</u>' categorical approach to determine whether "a state misdemeanor conviction for attempted riot is an aggravated felony for purposes of 8 U.S.C. §1101(a)(43)." <u>United States v.</u>

Hernandez-Rodriguez, 388 F.3d 779, 781 (10th Cir. 2004); 8 U.S.C. § 1101(a)(43)(listing numerous categories of offenses which count as an "aggravated felony" in subsections (A) through (U)).   The defendant "pleaded guilty to illegal reentry into the United States in violation of 8 U.S.C. § 1326." United States v. Hernandez-Rodriguez, 388 F.3d at 781. The defendant contended that the district court had "erred in imposing an eight-level enhancement for previous conviction of an aggravated felony under United States Sentencing Guideline Manual § 2L1.2(b)(1)(C), because the offense meets the 'crime of violence' definition in 18 U.S.C. § 16(a)."   United States v. Hernandez-Rodriguez, 388 F.3d at 781.  8 U.S.C. § 1101(a)(43)(f) defines "aggravated felony" as meaning "a crime of violence (as defined in section 16 of Title 18 . . . ) for which the term of imprisonment is at least one year." United States v. Hernandez-Rodriguez, 388 F.3d at 781. The defendant received 365 days of imprisonment for the attempted riot conviction, with 305 days suspended.  See id.

The Tenth Circuit determined that conviction satisfied 8 U.S.C. § 1101(a)(43)(f), so then it "continue[d] down the path to 18 U.S.C. § 16" to determine if the conviction was a crime of violence.  United States v. Hernandez-Rodriguez, 388 F.3d at 781. The Tenth Circuit explained: "Because Mr. Hernandez-Rodriguez's conviction for attempted riot is a misdemeanor under Utah law, it cannot qualify as a crime of violence under Section 16(b).  Thus our operative concern -- whether this somewhat unique Utah misdemeanor is an aggravated felony for guideline purposes -- turns on whether this offense has an element requiring some kind of use of force against a person or property." United States v. Hernandez-Rodriguez, 388 F.3d at 781. (emphasis added).  "To decide whether 'attempted riot' is a crime of violence under § 16(a), we apply the categorical approach set forth in Taylor v. United States . . . ." United States v. Hernandez-Rodriguez, 388 F.3d at 781.  "In determining whether the elements of an offense meet the guideline formulation of an aggravated felony, we look to the category of crime defined by that offense."  Id.  The Tenth Circuit

then looked at the Utah statute to determine whether the defendant was convicted of a crime of violence, because "in this situation, as in other cases interpreting ambiguous statutes, our categorical approach allows us to look to the charging paper and judgment of conviction in order to determine if the actual offense the defendant was convicted of qualifies as a crime of violence." Id. at 783 (internal quotations omitted).   It then examined the Utah law under which the defendant was convicted, to determine if it was a crime of violence:

> The Utah Information alleged that [the defendant] committed a third-degree felony by causing a riot in violation of § 76-9-101, because 'said defendant':
>
> * * * *
>
> engaged in tumultuous or violent conduct and thereby knowingly or recklessly created a substantial risk of causing public alarm and/or
>
> * * * *
>
> [the victim] suffered bodily injury. . . .
>
> We agree with the district court's conclusion that the charging document and plea support a finding that this conviction under § 76-9-101 is a crime of violence.

Id. at 783.  The Tenth Circuit noted that "[t]he charging document and the judgment unequivocally establish that [the defendant's] conviction for a violation of the attempted riot statute was 'an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" Id. at 784 (quoting 18 U.S.C. § 16(a)).  That conviction "therefore qualifies as an aggravated felony within the meaning of guideline § 2L1.2."  United States v. Hernandez-Rodriguez, 388 F.3d at 784.

The Tenth Circuit also employed the Taylor v. United States' categorical approach in a case involving the issue whether joyriding was an aggravated felony that would authorize an 8-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C).  See United States v. Elizalde-Altamirano, 226

Fed.Appx. 846, 847-848 (10th Cir. 2007).  Elizalde-Altamirano "pleaded guilty to illegal re-entry of a deported alien, in violation of 8 U.S.C. § 1326."  <u>United States v. Elizalde-Altamirano</u>, 226 Fed.Appx. at 847.  The district court followed the recommendation in the PSR, and classified the defendant's prior Utah misdemeanor joyriding conviction as an aggravated felony.  <u>See id.</u>  "As a result, the district court imposed an eight-level sentencing enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(C)."  <u>United States v. Elizalde-Altamirano</u>, 226 Fed.Appx. at 847.  That guideline calls for an 8-level increase "where a defendant previously was deported following a conviction for an aggravated felony."  <u>Id.</u>  Under the guidelines, the term "aggravated felony" "has the same meaning given that term by Section 101(a)(43) of the Immigration and Nationality Act."  <u>United States v. Elizalde-Altamirano</u>, 226 Fed.Appx. at 847.  Under the Immigration and Nationality Act ("INA"), § 101(a)(43)(g), "the term 'aggravated felony' includes 'a theft offense (including the receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."  <u>United States v. Elizalde-Altamirano</u>, 226 Fed.Appx. at 847 (alterations in the original). The Tenth Circuit was faced with the question "whether the term 'theft offense' as employed by the INA includes the crime of joyriding as defined by Utah law, such that joyriding must be labeled an 'aggravated felony' warranting the eight-level sentencing enhancement under § 2L1.2(b)(1)(C)" where the "[d]efendant previously received a one-year suspended sentence following his conviction in Utah state court for joyriding, <u>a class A misdemeanor</u>."  <u>Id.</u>  (emphasis added). To answer the question whether a conviction for misdemeanor joyriding was an aggravated felony under the INA, such that enhancement under § 2L1.2(b)(1)(C) was warranted, the Tenth Circuit used the <u>Taylor v. United States</u>' categorical approach:

> Under the INA, a misdemeanor conviction may qualify as an aggravated felony if a one-year sentence is imposed, even if that sentence is entirely suspended. Thus, the question facing this court is whether the term "theft offense" as employed by the INA

> includes the crime of joyriding as defined by Utah law, such that joyriding must be labeled an "aggravated felony" warranting the eight-level sentencing enhancement under§ 2L1.2(b)(1)(C).

United States v. Elizalde-Altamirano, 226 Fed.Appx. at 847. Using that approach, the Tenth Circuit held that joyriding fits within the definition of a theft offense within the meaning of the federal generic definition, even though joyriding is a class A misdemeanor under Utah state law. See id. The defendant's joyriding conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). See United States v. Elizalde-Altamirano, 226 Fed.Appx. at 849. See also United States v. Perez-Vargas, 414 F.3d 1282, 1284 (10th Cir. 2005)(applying Taylor v. United States' categorical approach to determine whether a conviction falls into the category of "crime of violence" which is an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G)).

In United States v. Nava-Zamora, 195 Fed.Appx. 801, 803 (10th Cir. 2006), the defendant challenged his 27-month sentence that resulted, in part, from a prior state conviction for drug trafficking. See 195 Fed.Appx. at 802. The defendant pleaded guilty to illegal reentry by a felon following deportation, in violation of 8 U.S.C. § 1326(a)(1)(2). The USPO recommended a 12-level enhancement based upon the defendant's prior conviction for unlawful delivery of a controlled substance. See United States v. Nava-Zamora, 195 Fed.Appx. at 802. The defendant objected to the PSR, and "argued that his prior Texas conviction for drug trafficking was a misdemeanor, not a felony, and therefore the 12-level enhancement provided for in U.S.S.G. § 2L1.2(b)(1)(B) [did] not apply." United States v. Nava-Zamora, 195 Fed.Appx. 801. U.S.S.G. § 2L1.2 authorizes a 12-level enhancement "if the defendant was previously convicted 'for a felony drug trafficking offense for which the sentence imposed was 13 months or less." United States v. Nava-Zamora, 195 Fed.Appx. at 803 (quoting U.S.S.G § 2L1.2). The defendant argued "that his Texas conviction for drug trafficking was not a felony." United States v. Nava-Zamora, 195 Fed.Appx. at 803.

The Tenth Circuit in United States v. Nava-Zamora explained that: "A 'felony' is 'any federal, state, or local offense punishable by imprisonment for a term exceeding one year." Id. (quoting U.S.S.G. § 2L1.2 cmt. n. 2).  The Tenth Circuit noted that "[t]he judgment in the prior case reveals that [the defendant] was convicted of a 'state jail' felony, which is an offense punishable by a period of confinement 'of not more than two years or less than 180 days.'" United States v. Nava-Zamora, 195 Fed.Appx. at 803 (quoting Tex. Penal Code § 12.35(a)).  The defendant argued that his conviction was a misdemeanor under Texas law, because under Texas law, "[a] court may punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as punishment for Class A misdemeanor if, after considering the gravity and circumstances of the felony committed and the history, character, and rehabilitative needs of the defendant, the court finds that such punishment would best serve the ends of justice."  United States v. Nava-Zamora, 195 Fed.Appx. at 803 (quoting Tex. Penal Code § 12.44).  The Tenth Circuit noted, that "[n]evertheless, 'a crime remains a felony even if punished as a misdemeanor under § 12.44'" United States v. Nava-Zamora, 195 Fed.Appx. at 803 (quoting United States v. Rivera-Perez, 332 F.3d 350, 352 (5th Cir. 2003)).  "[A]ccordingly, . . . the District Court properly applied the 12-level enhancement provided for in U.S.S.G. § 2L1.2(b)(1)(B)."  United States v. Nava-Zamora, 195 Fed.Appx. at 803.

In United States v. Diaz-Bonilla, 65 F.3d 875, 875-78 (10th Cir. 1995), the Tenth Circuit held that the defendant's conviction for assault for which he was sentenced to two years with one year suspended was a felony and therefore the district court's application of a 4-level enhancement under 2L1.2(b)(1) was authorized. The defendant in United States v. Diaz-Bonilla was convicted of "Unlawful Entry of a Previously Deported Alien, in violation of 8 U.S.C. § 1326." 65 F.3d at 876. The defendant had a previous conviction under state law.  See id.   The defendant objected to the

-25-

PSR's recommendation for a 4-level enhancement under § 2L1.2(b)(1), because his previous conviction under Colorado law for a third-degree assault was defined as a misdemeanor under state law.  See United States v. Diaz-Bonilla, 65 F.3d at 876.  "The maximum penalty for [third-degree assault] is up to two years in the county jail."  Id.  The United States argued that,"for purposes of uniformity in application of the Guidelines, the term "a conviction for a felony" in § 2L1.2(b)(1) should be defined by reference to federal law."  United States v. Diaz-Bonilla, 65 F.3d at 877.  The Tenth Circuit held "that for the purposes of § 2L1.2, a felony conviction is defined as a conviction under a statute, state or federal, with a statutory maximum penalty in excess of one year."  United States v. Diaz-Bonilla, 65 F.3d at 877.  The Tenth Circuit held the district court properly applied a 4-level enhancement to the defendant's sentence under § 2L1.2.  See United States v. Diaz-Bonilla, 65 F.3d at 877-78.

In United States v. Ordonez-Navarette, 154 Fed.Appx. 66 (10th Cir. 2004), the Tenth Circuit reiterated its holding in United States v. Diaz-Bonilla.  The Tenth Circuit noted that  United States v. Diaz-Bonilla "predated U.S.S.G. § 2L1.2, Application Note 2," but still "recognize[d] that Diaz-Bonilla was interpreting the term 'felony' for the purpose of a sentencing guideline enhancement."  United States v. Ordonez-Navarette, 154 Fed.Appx. at 68, 68 n.1.  The Tenth Circuit also held "that its reasoning applies to the question of just what constitutes a felony under 8 U.S.C. § 1326(b)(1)."  United States v. Ordonez-Navarette, 154 Fed.Appx. at 68, 68 n.1.  It explained "[t]he fact that Colorado classifies a conviction for Third Degree Assault as a Class I misdemeanor is not controlling.  What is controlling is that a conviction in Colorado carries a maximum sentence of 18 months imprisonment."  United States v. Ordonez-Navarette, 154 Fed.Appx. at 68, 68 n.1.

## ANALYSIS

Gomez-Castruita objects to paragraph 12 of the PSR and asserts the 4-level increase applied

to his offense level for his felony conviction of Aggravated Driving Under the Influence was incorrectly applied.  See Defendant's Objections to the Pre-Sentence Report ("Defendant's Objections"), at 1 filed Oct. 10, 2007 (Doc. 15).  Gomez-Castruita asserts that his felony conviction results from a misdemeanor being aggravated under Arizona law.  See Defendant's Objections, at 2 ("Therefore, the offense conduct becomes 'aggravated' and thus a felony, solely because of the prior DUI conviction; the actual conduct of driving under the influence remains the same, a misdemeanor offense.").  Gomez-Castruita is not contesting the fact that he pled to aggravated driving under the influence of intoxicating liquor while his driver's license was suspended.  See Defendant's Objections, at 1.

Gomez-Castruita contends that the same logic that the Ninth Circuit used in United States v. Corona-Sanchez must apply to the determination of whether a defendant's prior offense was a felony.  See Defendant's Objections, at 2-3.  Gomez-Castruita argues the recidivism component of his prior conviction does not relate to the commission of the offense of misdemeanor DUI.  See Defendant's Objections, at 3.  Gomez-Castruita asserts that his conviction for aggravated DUI cannot be used as a basis to enhance his sentence pursuant to U.S.S.G. § 2L1.2, because his offense conduct is a misdemeanor and not a felony.  See Defendant's Objections, at 3.  Gomez-Castruita submits that the Fifth Circuit's cases are distinguishable and contrary to the Supreme Court of the United States' mandate with regard to recidivist enhancements.  See Tr. at 10:6-17 (Johnson).  The Court believes that the issue is which line of cases best interprets the Sentencing Guidelines and Supreme Court precedent.

## I.      THE COURT WILL NOT EMPLOY A TAYLOR V. UNITED STATES' APPROACH IN DETERMINING WHETHER GOMEZ-CASTRUITA'S PRIOR CONVICTION IS A FELONY.

The Ninth Circuit applied Taylor v. United States in United States v. Corona-Sanchez.  The

defendant's felony conviction in United States v. Corona-Sanchez did not "facially qualify as an aggravated felony for federal sentencing purposes under Taylor v. United States because it is not a theft offense for which the term of imprisonment is at least one year." United States v. Corona-Sanchez, 291 F.3d at 1208.  The Ninth Circuit noted that the defendant received only a two-year sentence for his previous petty theft only because that offense was enhanced by California Penal Code § 666, "which provides a sentence enhancement for recidivists."  United States v. Corona-Sanchez, 291 F.3d at 1208.  The Ninth Circuit then determined that, under the categorical approach of Taylor v. United States, the petty theft violation, without reference to § 666, would have a maximum penalty of six months.  See United States v. Corona-Sanchez, 291 F.3d at 1208.  The PSR in United States v. Corona-Sanchez described only the qualifying offense as "666/488 PC, Petty Theft with Prior Jail Term for a Specific Offense."  291 F.3d at 1206.  No court documents or evidence was presented to the district court nor to the Ninth Circuit regarding the offense other than the information contained in the PSR.  See id.

The PSR submitted in this case likewise does not provide court documents or evidence regarding Gomez-Castruita's conviction for felony DUI, other than the description "Count 1-- Aggravated Driving Under the Influence (felony); Coconino Superior Court, Flagstaff, Arizona; Case No. CR 2006-0064."  PSR ¶ 22, at 6.  The PSR also indicates that Gomez-Castruita was sentenced to 3 years probation and 4 months jail as a result of pleading guilty to the aggravated DUI.  See PSR ¶ 22, at 6.  Gomez-Castruita represents that his aggravated DUI conviction was under A.R.S. §§ 28-1383(A)(1), 28-1381(A)(1), 28-1444, 13-701, and 13-801.  See Defendant's Objections, at 1.  The United States has offered no evidence regarding Gomez-Castruita's aggravated DUI conviction.  See United States' Response to Objections to the PSR Filed October 10, 2007 (Doc. 15), filed Oct. 19, 2007 (Doc. 16).

The Arizona statutes that govern Gomez-Castruita's prior conviction are distinct from the statutes involved in United States v. Corona-Sanchez. While Corona-Sanchez' conviction for petty theft was the result of enhancement under a separate statute, California Penal Code § 666, see United States v. Corona-Sanchez, 291 F.3d at 1208, Gomez-Castruita's conviction was under A.R.S. § 28-1383(A)(1), a violation of which is a felony as described within that same statute, see A.R.S. § 28-1383(L)(1).  That is, unlike the petty theft statute in United States v. Corona-Sanchez, Arizona's determination that aggravated DUI is a felony is apparent on the face of A.R.S. § 28-1383(L)(1). Compare with  United States v. Corona-Sanchez, 291 F.3d at 1208; Cal. Penal Code §§ 484(a) and 488 (West 2001).  The Ninth Circuit itself has expressed doubt regarding the applicability of United States v. Corona-Sanchez to circumstances outside those in that case.  See United States v. Moreno-Hernandez, 419 F.3d at 912 ("It is thus unlikely that the less-than-clear language of Pimentel-Flores, summarizing Corona-Sanchez, was meant to go beyond the circumstances before the court in either of the two cases.").

The Court shares the same concerns that the Supreme Court expressed in Apprendi v. New Jersey.  Almendarez-Torres v. United States was an "exceptional departure" from the traditional safeguards attached to factual findings which increase a punishment beyond the maximum statutory range.  See Apprendi v. New Jersey, 530 U.S. at 487.  Gomez-Castruita, however, like Almendarez-Torres, does not challenge the accuracy of the fact that he has a prior conviction under Arizona state law or that the offense to which he pled carried a maximum penalty of at least 2.5 years.  See Defendant's Objections, at 1; Apprendi v. New Jersey, 530 at 488 ("Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated by allowing a judge to determine a 'fact' increasing

punishment beyond the maximum of the statutory range.").  The Court agrees with the Fourth Circuit's observation that there is some tension in the Supreme Court's precedent, but that only the Supreme Court is authorized to resolve the tension caused by Almendarez-Torres.  See United States v. Duval, 497 F.3d at 83.  The tension in Supreme Court precedent has not gone unnoticed:

> The need for further refinement of Taylor endures because this Court has not yet reconsidered Almendarez-Torres v. United States, which draws an exception to the Apprendi line of cases for judicial factfinding that concerns a defendant's prior convictions.  Almendarez-Torres, like Taylor, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that Almendarez-Torres was wrongly decided. The parties do not request it here, but in an appropriate case, this Court should consider Almendarez-Torres' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of Almendarez-Torres, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements.

Shepard v. United States, 544 U.S. 13, 27-28(2005)(THOMAS, J., concurring in part and concurring in judgment)(internal citations omitted).

On the other hand, the Fifth Circuit's position is that a sentencing court looks to the sentence punishable by a defendant's prior conviction, including enhancements.  See United States v. Sanchez-Villalobos, 412 F.3d at 577 n.3; Mutascu v. Gonzales, 444 F.3d at 712.  The Fourth Circuit noted some tension between the Supreme Court's holdings in Apprendi v. New Jersey, Ewing v. California, Lopez v. Gonzales, and its holding in Almendarez-Torres v. United States, but ultimately determined that a defendant's prior conviction was a felony when state law would recognize it as such for state-law purposes.  See United States v. Duval, 496 F.3d at 84.

The Tenth Circuit has not yet addressed the issue whether a 4-level enhancement under U.S.S.G. § 2L1.2(b)(1)(D) would be authorized if it were based upon a conviction for aggravated driving under the influence under Arizona law.  See United States v. Peña-Flores, 2007 WL

25630313.  The Tenth Circuit has used the <u>Taylor v. United States</u>' categorical approach in cases to determine whether defendants' prior convictions are "aggravated felonies" for sentencing enhancement.  <u>See</u> <u>United States v. Elizalde-Altamirano</u>, 226 Fed.Appx. at 847-48 (using <u>Taylor v. United States</u>' categorical approach to determine whether a defendant's prior state conviction for joyriding that is classified as a misdemeanor under state law for which he received a one-year suspended sentence is an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C) and Section 101(a)(43) of the Immigration and Nationality Act); <u>United States v. Perez-Vargas</u>, 414 F.3d at 1284 (applying <u>Taylor v. United States</u>' categorical approach to determine whether a conviction falls into the category of "crime of violence" which is an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G))); <u>United States v. Hernandez-Rodriguez</u>, 388 F.3d at 781-84 (using <u>Taylor v. United States</u>' categorical approach to determine whether a conviction for attempted riot is an aggravated felony for § 2L1.2(b)(1)(C), because the offense meets the crime of violence definition in 18 U.S.C. § 16(a) and 8 U.S.C. § 1101(a)(43)(f) when under state law it was classified as a misdemeanor).  The Tenth Circuit has not used the <u>Taylor v. United States</u>' categorical approach to determine whether a previous conviction under state law is a felony authorizing a sentencing enhancement.  <u>See</u> <u>United States v. Hernandez-Garduno</u>, 460 F.3d at 1293 (holding that defendants' misdemeanor convictions under Colorado state law for third-degree assault were felonies for purposes of §2L1.2(b)(1)(A)(ii), when they were sentenced to less than one year imprisonment, because Colorado law provides for a term of imprisonment up to 18 months for that offense); <u>United States v. Nava-Zamora</u>, 195 Fed.Appx. at 803 (holding that the defendant's prior conviction for drug trafficking under Texas law was a felony under U.S.S.G. § 2L1.2(b)(1)(B) because it is an offense punishable by a period of confinement up to two years, even if a Texas court could punish that offense as a misdemeanor under Texas law); <u>United States v. Ordonez-Navarette</u>, 154 Fed.Appx. at 68 (holding that, in

determining what constitutes a felony under U.S.C. § 1326(b)(1), "[t]he fact that Colorado classifies a conviction for Third Degree Assault as a Class I misdemeanor is not controlling. What is controlling is that a conviction in Colorado carries a maximum sentence of 18 months imprisonment."); United States v. Diaz-Bonilla, 65 F.3d at 875-78 (defendant's conviction for assault for which he was sentenced to two years with one year suspended was a felony under § 2L1.2(b)(1), even if defined as a misdemeanor under Colorado law, because the maximum penalty for that offense is up to two years in the county jail). See United States v. Ordonez-Navarette, 154 Fed.Appx. at 68 n. 1 (explaining that United States v. Diaz-Bonilla "predated U.S.S.G. § 2L1.2, Application Note 2.").

In Taylor v. United States, the Supreme Court was attempting to determine whether prior convictions were for a "violent" felony. The Supreme Court decided that, in applying 18 U.S.C. § 924(c), the court must first look at the statutory definition of the prior offense to determine whether the defendant was actually convicted of committing violence. The issue here is not whether the prior offense was actually a violent crime, but whether it was a felony. There is nothing in Taylor v. United States that suggests the sentencing court needs to look at the elements of a prior felony to determine whether the felony is a misdemeanor with an enhancement for recidivism. The opinion in Taylor v. United States tells the sentencing court what to look to in determining whether the crime was a violent felony; the issue here is whether the court must separate the prior crime into its misdemeanor component and its enhancement component. Because Taylor v. United States does not help the Court address that substantive issue, the Court will not use that case to dissect the prior conviction into its misdemeanor and enhancement components.

I.      **GOMEZ-CASTRUITA'S PRIOR CONVICTION IS A FELONY UNDER THE PLAIN LANGUAGE OF U.S.S.G. § 2L1.2 APPLICATION NOTE 2.**

Based on the plain language of U.S.S.G. § 2L1.2 Application Note 2 -- a "felony means <u>any</u> federal, state, or local offense punishable by imprisonment for a term exceeding one year" -- the Court does not believe that it is necessary to apply the categorical approach that the Supreme Court set forth in <u>Taylor v. United States</u>.  U.S.S.G. § 2L1.2 app. cmt. n. 2 (emphasis added).  Although the Tenth Circuit has employed <u>Taylor v. United States</u>' categorical approach in a case when it was trying to determine whether an offense classified as a misdemeanor by state law qualified as a felony for sentencing purposes, <u>see</u> <u>United States v. Elizalde-Altamirano</u>, 226 Fed.Appx. at 847, it has not indicated that the same analysis should apply in determining whether an offense classified as a felony under state law should be recognized as a felony under U.S.S.G. § 2L1.2 Application Note 2.

The purpose of <u>Taylor v. United States</u> was to "permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all elements of generic burglary."  495 U.S. at 602.  "For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement."  <u>Id.</u>  <u>Taylor v. United States</u> holds "that an offense constitutes 'burglary' for the purposes of a § 924 (e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually require the jury to find all the elements of generic burglary in order to convict the defendant."  <u>Id.</u> There is no indication in <u>Taylor v. United States</u> that its categorical approach is applicable to any

determination of a fact of prior conviction.  The Supreme Court directs sentencing courts enhancing defendants' sentences under § 924(e)(2)(B)(ii) to "look only to the fact of conviction and the statutory definition of the prior offense."

Almendarez-Torres v. United States rejected the argument that recidivism must be treated as an element of an offense.  See 523 U.S. at 230. The defendant in Almendarez-Torres v. United States contended that

> in essence, that this Court should simply adopt a rule that any significant increase in a statutory maximum sentence would trigger a constitutional "elements" requirement. We have explained why we believe the Constitution . . . does not impose that requirement. We add that such a rule would seem anomalous in light of existing case law that permits a judge, rather than a jury, to determine the existence of factors that can make a defendant eligible for the death penalty, a punishment far more severe than that faced by [the defendant] here."  Id. at 1232.  The Supreme Court "reject[ed] [the defendant's] constitutional claim that his recidivism must be treated as an element of his offense.

Id.  The Supreme Court noted that a rule requiring recidivism to be treated as an element of the defendant's offense, "would . . . [be] difficult to reconcile . . . with [its] precedent holding that the sentencing-related circumstances of recidivism are not part of the definition of the offense for double jeopardy purposes.  Id.

Because the Court does not believe that Taylor v. United States' categorical approach applies under the facts and circumstances of this case, it will not follow the Ninth Circuit's approach in United States v. Corona-Sanchez, 291 F.3d 1201 (9th Cir. 2002).  Gomez-Castruita's proposed approach to U.S.S.G. § 2L1.2(b)(1)(D) would result in failing "to accord proper deference to the policy judgments that find expression in the legislature's choice of sanction."  Ewing v. California, 538 U.S. at 29.  The Arizona legislature chose to make a subsequent DUI a felony under its law.  See A.R.S. § 28-1383(L)(1).  The Court declines to follow Gomez-Castruita request to rewrite A.R.S. § 28-1383(A)(1) ("Aggravated driving or actual physical control while under the influence;

violation; classification; definition") to be identical to A.R.S. § 28-1381 ("Driving or actual physical control while under the influence; trial by jury; presumptions; admissible evidence; sentencing; classification").   Under a plain reading of the language  in U.S.S.G. § 2L1.2, Gomez-Castruita's Arizona conviction is a felony.   Gomez-Castruita was convicted of Aggravated Driving Under the Influence, a class 4 felony under Arizona law.   See A.R.S. § 28-1383(A)(1).   That crime is punishable by a term of incarceration of more than one year.   See A.R.S. § 13-701(C)(3).   Gomez-Castruita does not contest the fact of his conviction under these statutes.

　　　　**IT IS ORDERED** that the Defendant's Objections to the Pre-Sentence Report are overruled.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
　Acting United States Attorney
Rhonda P. Backinoff
Roberto Ortega
　Assistant United States Attorney
Albuquerque, New Mexico

　　　*Attorneys for the Plaintiff*

Erlinda O. Johnson
Albuquerque, New Mexico

　　　*Attorney for the Defendant*